# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **VICTRINA HALL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-17-357-RAW-SPS |
| ) | |
| **COMMISSIONER of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Victrina Hall requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner should be REVERSED, and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was twenty-five years old at the time of the administrative hearing (Tr. 31). She completed the eleventh grade, and has no past relevant work (Tr. 20, 188). The claimant alleges that she has been unable to work since March 1, 2014, due to ruptured globe in the left eye (no left eye), as well as 60% vision loss in the right eye (Tr. 187).

### Procedural History

On April 7, 2014, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 15, 2016 (Tr. 14-21). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that she could not climb ladders, ropes, and scaffolding due to visual impairment; would need to avoid hazardous or fast machinery, unprotected heights, and driving; would be unable to perform tasks involving stereo vision, depth perception, and peripheral vision (Tr. 16-17). The ALJ thus concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was

work she could perform, *e. g.*, bakery racker, agricultural produce sorter, and office helper (Tr. 20).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess whether her impairments meet the requirements of Appendix 1, Part 404, Subpart P ("the Listings"), (ii) failing to properly assess her RFC by accounting for all her impairments, and (iii) improperly determining that there was work she could perform. The undersigned Magistrate Judge agrees with the claimant's first contention, and recommends that the case be reversed.

The ALJ found the claimant's left eye blindness and right eye reduction in visual efficiency were severe impairments (Tr. 16). The relevant medical records reveal that the claimant suffered injuries to her face as a result of domestic violence on March 1, 2014 (Tr. 274). The injuries included a left globe rupture requiring enucleation, as well as right temporal hemianopsia (Tr. 297). The left eye was injured so severely that it was replaced with a prosthesis on August 26, 2014 (Tr. 332).

On July 25, 2014, Dr. David L. Roberts, D.O. wrote a letter in which he stated that the claimant had suffered a total loss of vision in her left eye, as well as a permanent complete temporal hemianopsia for which there was no chance of recovery (Tr. 336). He explained this to mean that although her vision forward was clear, she could not see anything to the right of whatever object she was looking at (Tr. 336). He strongly recommended that she not drive, and further noted that she had no useable side vision, particularly to the right, which affected her ability to read and safely move about (Tr. 336).

On November 6, 2014, Dr. Alison Hansen, O.D., conducted a consultative examination of the claimant. She completed a form in which she stated that the claimant navigated the office without help (Tr. 339). She noted the claimant had no left eye, as well as abnormal findings of optic disc drusen on the right eye, and that the claimant had 20/20 distance vision in the right eye without glasses and 20/40 vision in the right eye at near acuity (Tr. 339). She did not complete the Field of Vision section, which asked for the widest diameter in degrees of remaining peripheral visual fields, although she checked the box indicating that it was "abnormal" and attached a Visual Field Analysis test result without commentary (Tr. 339-340). The visual field analysis contains some indication that the findings are "outside normal limits," and appears to indicate an MD of -18.17 (Tr. 340). These test results are not defined and have not been correlated to the requirements of the Listings.

State agency physician Dr. William Oehlert, M.D., reviewed the records and found that the claimant had no exertional limitations, but that she could only frequently climb ramps/stairs, and could never climb ladders/ropes/scaffolds due to her right eye vision loss. He noted she had limited near acuity, depth perception, accommodation, color vision, and field of vision in the right eye, causing a problem with depth perception (Tr. 56). Additionally, he found that she should avoid concentrated exposure to hazards (Tr. 57). He did not mention her total loss of left eye in assessing her limitations, but mentioned it in summarizing the evidence, and it is not clear it is accounted for in his opinion (Tr. 55-57). On reconsideration, Dr. Luther Woodcock reviewed the record and found the same postural limitations as Dr. Oehlert, but that her visual limitations only affected far acuity

-5-

and field of vision in the right eye (Tr. 68). It is likewise not clear his opinion accounted for the loss of her left eye. He also misstated Dr. Roberts's letter, indicating he believed it said that she could read and move safely about, despite the letter stating that the damage to her side vision *affected* her ability to read and move safely about (Tr. 69, 336). He then stated that she should "avoid objects coming at her from the periphery of her vision" without explaining how she would know they were coming at her, and that she could avoid known, common hazards in the workplace (Tr. 69). Further, he agreed she should avoid even moderate exposure to hazards (Tr. 69).

On December 27, 2015, Dr. John J. Alpar, M.D. reviewed the claimant's record and sent a letter to the ALJ in which he stated that her visual performance, together with loss of depth perception, might put her in a category to equal Listing 2.04 (Tr. 344). He opined that the claimant should not expose herself to unprotected heights, climb ladders, or work in areas with fast moving machinery, and that she could not likely perform tasks such assembling microchips (Tr. 344).

At the administrative hearing, the claimant testified that, as to her remaining vision in her right eye, she could see something clearly and directly in front and to the left but could not see anything on her right side (Tr. 36). She testified that all her doctors had told her not to drive, and that she could read small sentences "here and there," but that her nose gets in the way and causes difficulty (Tr. 37). Additionally, she stated that she could read "little words" for twenty minutes but reading or watching television were difficult and her grandmother had to dial the phone for her (Tr. 41). She further testified that she gets regular headaches due to eye strain (Tr. 37). When the claimant testified that her depth perception

issues caused her problems with cooking, including knocking things off the stove top, the ALJ said, "[U]sually I'm only looking at one pot at a time. I'm still having a hard time grasping why [your depth perception] should cause you to have problems cooking." (Tr. 39). As for going out in public, the claimant testified that she goes with her grandmother because she has physically run into people before, and has run the shopping cart into things before, due to her vision (Tr. 39). When asked about navigating the consultative examiner's office without help, she stated that someone was escorting her and she did not walk by herself (Tr. 39).

Evidence submitted to the Appeals Council contains a "Visual Impairment Questionnaire," as to the claimant's impairments, with analysis of Listings 2.02, 2.03, and 2.04. Dr. Randy M. Ennen, M.D., stated in the questionnaire dated March 30, 2016, that all three listings applied to the claimant's left eye, because the left eye was a prosthesis, and that Listing 2.03(A) applied to the right eye in light of a right hemianopsia in the right eye (Tr. 7). This evaluation was accompanied by a diagnostic exam which appears to support such a finding but is not clearly correlated and explained in the same terms as the Listing itself (Tr. 9-10).

In his written opinion at step three, the ALJ found that the claimant's impairments did not meet a Listing, noting that "no acceptable medical source has mentioned findings equivalent" to a Listing, and specifically indicating that Listing 2.04 requires visual efficiency of the better eye of 20% or less (Tr. 16). At step four, he summarized the claimant's hearing testimony, as well as much of the medical evidence in the record (Tr. 17-20). As to Dr. Alpar's opinion, the ALJ gave it "considerable weight," but stated

-7-

that "he did not provide factors to convince the undersigned that she could meet the listing." (Tr. 19).  He then gave great weight to the opinions of the state reviewing physicians, and ultimately asserted that the assigned RFC was supported by their opinions, as well as the opinions of Dr. Hansen and Dr. Alpar (Tr. 20).

Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart,* 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton,* 79 F.3d at 1009 [quotation omitted].  *Clifton* requires the ALJ to discuss the evidence and explain why a claimant was not disabled at step three.  *Id.*, *citing Cook v. Heckler,* 783 F.2d 1168, 1172–73 (4th Cir. 1986).  In this case, the ALJ found that the claimant's impairments did not meet or equal any listing.  In making such determination, the ALJ specifically noted Listing 2.04 at step three, but not Listing 2.03.  At the administrative hearing, the claimant had asserted her impairments approximated either Listing 2.03 or Listing 2.04 (Tr. 41), and she makes these same assertions on appeal.  This Listings have the following requirements:

**2.03** Contraction of the visual field in the better eye, with:

A.  The widest diameter subtending an angle around the point of fixation no greater than 20 degrees. OR

B.  An MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field.  OR

C. A visual field efficiency of 20 percent or less, determined by kinetic perimetry.

**2.04** Loss of visual efficiency, or visual impairment, in the better eye:

A. a visual efficiency percentage of 20 or less after best correction. OR

B. A visual impairment value of 1.00 or greater after best correction. 20 C.F.R. P. 404, Subpt. P, App. 1, §§ 2.03, 2.04.

While the ALJ possibly addressed Listing 2.04, the ALJ wholly failed to assess the claimant's impairments in light of Listing 2.03. Moreover, this Court "can only review ALJ decisions that make specific findings on the facts of the case. If [the claimant] does not meet the capsule definition, then the ALJ must make that determination in the first instance." *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006). If the ALJ disagreed with the record regarding the claimant's impairments, he should have discussed his reasons for such a finding. *See, e. g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

This is particularly troublesome in light of the ALJ's reliance on the state reviewing physician opinions in the record. These opinions, to which the ALJ gave "great weight,"

do not make clear that they even considered the claimant's complete lack of vision in her left eye *in addition to* the partial loss of vision in her right eye. Furthermore, Dr. Woodcock's assessment misstated Dr. Roberts's limitations, asserting she could read and move safely about when Dr. Roberts actually said the opposite (Tr. 69, 336).

The Court's reason for reversal is bolstered by the additional evidence submitted to the Appeals Council, specifically Dr. Ennen's opinion that the claimant meets Listing 2.03(A) for the right eye and is totally blind in the left. The Appeals Council was required to properly consider this evidence if it was: (i) new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision," *see Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995), but failed to do so here. Evidence is new if it "is not duplicative or cumulative," and this evidence qualifies as such. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater*, 83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) (unpublished table opinion). Here, this evidence directly calls into question the ALJ's step three findings. In finding the claimant's vision was not further limited, the ALJ relied, at least in part, on the limited evidence (or lack thereof) related to the claimant's remaining eye usage.

Finally, the evidence is chronologically relevant because it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The Appeals Council rejected this opinion because it was dated after the ALJ's decision and did not "relate to the period at issue." (Tr.2). However, the opinion pertains to the extent of the claimant's eye injuries, which unquestionably occurred in March 2014, making the assessment chronologically relevant in corroborating a prior diagnosis as well as the claimant's own testimony. *See Palomarez v. Colvin*, 2015 WL 13658668, at *5 (D. N.M. Aug. 5, 2015) ("[T]he Tenth Circuit has explained that evidence submitted to the Appeals Council is temporally relevant when it corroborates a prior diagnosis and/or a claimant's hearing testimony, and does not require the evidence newly submitted to the Appeals Council to pre-date the ALJ's order."), *citing Padilla v. Colvin*, 525 Fed. Appx. 710, 713 (10th Cir. 2013) ("[T]he psychological report corroborates an anxiety diagnosis reported by Mr. Padilla's treating doctor, Dr. Evans, prior to the hearing, as well as Mr. Padilla's hearing testimony. Meanwhile, his intellectual functioning evaluation relates to and augments Dr. Evans' earlier report that he could not read or write. As to the audiological report, Mr. Padilla identifies the fact that he testified about his hearing loss during the hearing before the ALJ. The additional evidence thus relates to the time period before the ALJ's decision."). The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. § 416.1470(b), so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence

-11-

standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

In light of this new evidence, the undersigned Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence because the ALJ had no opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above, and the Commissioner's decision must therefore be reversed, and the case remanded for further proceedings. On remand, the ALJ should re-assess the claimant's RFC in light of the new evidence and consider further developing the record to provide clear and objective test results corresponding to the requirements of Listings 2.03 and 2.04, and then re-determine the work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED, and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 28th day of February, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**